**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID P. DIEHL,** | : | **CIVIL ACTION NO. 1:07-CV-1213** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **ELECTRONIC DATA SYSTEMS CORPORATION and LIFE INSURANCE COMPANY OF NORTH AMERICA,** | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

Plaintiff David P. Diehl ("Diehl") brings this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. Presently before the court is the motion for judgment on the pleadings (Doc. 18),[1] filed by defendant Electronic Data Systems Corporation ("EDS"), with respect to Diehl's state law claims. For the reasons that follow, the motion will be granted.

[1] While the motion is styled as a motion to dismiss, the court has previously determined that it is more properly treated as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (See Doc. 25 ¶ 1(b)).

## I. **Factual Background**[2]

From 2000 to 2006, Diehl was a full-time employee of EDS. (Doc. 15 ¶¶ 13, 15-17.) At all times relevant hereto, EDS offered a short-term disability benefit plan[3] to its qualified full-time employees.[4] (Id. ¶ 19.) The plan, which is administered by defendant Life Insurance Company of North America ("LINA"), provides up to twenty-six weeks of fully paid leave for "medically approved absences." (Id. ¶¶ 20,

---

[2] In accordance with the standard of review for a motion for judgment on the pleadings, the court will present the facts in the light most favorable to Diehl, the non-moving party. See infra Part II.

[3] Diehl concedes that the short-term plan is neither an insurance product nor an ERISA plan. Instead, he alleges that it is a "self-funded salary continuance payroll practice of EDS" that is "funded by corporate funds." (Doc. 15 ¶¶ 24-25, 27.)

[4] To be considered a "qualified full-time employee" for purposes of the plan, an employee must be classified as an active EDS employee and have worked at least thirty hours per week for a minimum period of sixty days. (Doc. 15 ¶ 19; Doc. 19, Ex. 1 at 3.) The "active employee" classification adds several criteria that must be met before an individual may qualify for plan benefits. They are that the employee must: (1) perform "all the material duties of [his or her] occupation" at his or her "usual place of business" or any other location required by EDS, (2) be a citizen or legal resident of the United States or Canada, (3) receive United States benefits on a United States payroll, (4) not be a temporary or seasonal employee, and (5) be absent from work "solely due to vacation days, holidays, scheduled days off, or approved leaves of absence not due to disability, . . . education[] . . ., or . . . personal [reasons]." (Doc. 19, Ex. 1 at 3.) Diehl alleges that he satisfies each of these criteria, having been classified as an active employee of EDS and having worked approximately forty hours per week for nearly six years at a facility within the United States. (Doc. 15 ¶¶ 15-18.)

25; see also Doc. 19, Ex. 1.)[5] The purpose of the plan is to protect an employee's income in the event that he or she is "unable to work due to an illness, injury or pregnancy for which [he or she] is receiving appropriate care and treatment." (Doc. 19, Ex. 1.) The plan's benefits are available to any employee considered to be "disabled." An individual is considered disabled for purposes of the plan if he or she, "solely because of injury or sickness," is: (1) "receiving appropriate care and treatment from a medical provider on a continuing basis," (2) "unable to perform all the material duties of his or her regular occupation," and (3) "unable to earn more than 80% of [his or her] covered earnings from working in [his or her] regular occupation." (Id. at 3; see also Doc. 15 ¶ 21.)

When Diehl's health began to deteriorate in May of 2005, he was permitted to work from his residence.[6] (See Doc. 27 at 1.) On May 12, 2006, Diehl was granted short-term disability benefits "due to lumbar degenerative disc disease and lumbar radiculitis." (Doc. 15 ¶¶ 22-23.) On August 2, 2006, Diehl was informed that defendants were "unable to continue paying benefits beyond July 7, 2006." (Id. ¶ 28;

---

[5] The court notes that while the plan itself was not attached to the amended complaint, its language may be considered in deciding the instant motion for judgment on the pleadings because it was referred to in the amended complaint and is central to Diehl's claims. See Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) (stating that documents that the defendant attaches to the motion or accompanying briefs "are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim"); (see also Doc. 15.)

[6] Diehl signed two "alternative work arrangement agreements" that memorialized his intention to work home from May 2, 2005 until March 31, 2007. (See Doc. 27, Exs. 1, 2.)

id., Ex. B at 1.) As a result, Diehl received approximately thirteen weeks of coverage. (Id. ¶ 29.) Diehl appealed the benefits denial on September 22, 2006. (Id. ¶ 30; id., Ex. C.) On October 10, 2006, Diehl's appeal was denied because LINA claimed that it had "not received sufficient clinical medical documentation to substantiate any limitations and restrictions" on Diehl's ability to perform his job after July 7, 2006. (Id. ¶¶ 31-32; id., Ex. D.) Diehl alleges that his physical condition was "continuously deteriorating" and that he remained eligible for benefits after July 7, 2006. (Id. ¶ 33.)

EDS also offered a long-term disability plan to employees who had received the entire twenty-six weeks of coverage pursuant to the short-term plan. (Id. ¶ 35.) Diehl alleges that the long-term plan is funded through LINA and qualifies as an ERISA plan. (Id. ¶¶ 36, 68.) Diehl alleges that he was an "eligible employee who participated in the [long-term] plan" and that he had purchased supplemental long-term coverage that would have entitled him to $4,300.00 per month in benefits. (Id. ¶¶ 36-37, 69-71, 73, 75.) Despite Diehl's alleged eligibility for long-term coverage, he was denied benefits because he had not received the entire twenty-six weeks of coverage allotted by the short-term plan. (Id. ¶¶ 38, 72, 77.) Diehl further alleges that LINA "has an egregious conflict of interest in making disability determinations" because it both determines an employee's right to short-term benefits and bears responsibility for the long-term plan once the short-term coverage has expired. (Id. ¶ 80.)

Diehl commenced working full-time from his residence on October 23, 2006. On November 17, 2006, he reapplied for short-term benefits. In December of 2006 and January of 2007, Diehl received eight additional weeks of short-term coverage. His benefits "unilaterally stopped" after January of 2007. (Id. ¶¶ 45-47.) In total, Diehl had received twenty-one of the twenty-six available weeks of short-term coverage when his benefits ceased for the second time. (Id. ¶ 48.) Diehl was terminated from his position on June 15, 2007. (Id. ¶ 49.)

On May 25, 2007, Diehl filed this action in the Cumberland County Court of Common Pleas. (See Doc. 1, Ex. 3.) On July 3, 2007, Diehl's action was removed to this court. (See Doc. 1.) Diehl's amended complaint, which he filed on August 28, 2007, alleges that: (1) EDS and LINA have acted in "bad faith" and refused to extend him benefits "without support in law or contract," (2) EDS violated the Pennsylvania Wage Payment and Collection Law ("Wage Law"), 43 P.S. §§ 260.1 - 260.45, and (3) EDS and LINA violated ERISA when they refused to provide Diehl with the full twenty-six weeks of short-term coverage, making him ineligible for long-term benefits pursuant to an ERISA plan. (See Doc. 15; see also id. ¶¶ 50, 52.) EDS filed the instant motion for judgment on the pleadings with respect to Diehl's non-ERISA claims. (See Doc. 18.) The motion has been fully briefed and is ripe for disposition.

## II. Standard of Review

A motion for judgment on the pleadings is a procedural hybrid of a motion to dismiss and a motion for summary judgment. Rule 12(c) of the Federal Rules of

Civil Procedure provides: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." FED. R. CIV. P. 12(c). To succeed on a motion under Rule 12(c), "the movant [must] clearly establish . . . that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Hayes v. Cmty. Gen. Osteopathic Hosp., 940 F.2d 54, 56 (3d Cir. 1991); see also 5A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1368, at 519 (2d ed. 1990). When deciding a motion for judgment on the pleadings, the court is directed to view "the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Hayes, 940 F.2d at 56.

## III. Discussion

Diehl asserts breach of contract and breach of the duty of good faith and fair dealing claims against EDS.[7] The court will consider these two claims in tandem because a claim that a defendant violated the duty of good faith and fair dealing "is,

---

[7] The exact nature of Diehl's claim is unspecified in the amended complaint, which captions the claim generically as "State Based Claim." (See Doc. 15 at 7.) Construing the complaint in the light most favorable to Diehl, as the court must do in the context of the instant motion, Diehl arguably asserts breach of contract and breach of the duty of good faith and fair dealing claims pursuant to state law. Because Diehl concedes that the short-term plan is not an insurance product (see Doc. 15 ¶ 24), the court will not construe his complaint as asserting a violation of Pennsylvania's insurance bad faith statute. See 42 PA. CONS. STAT. ANN. § 8371.

As these claims present issues of state law, the court will resolve them by applying Pennsylvania law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79-80 (1938); see also Borse v. Piece Goods Shop, Inc., 963 F.2d 611, 613 (3d Cir. 1992) (noting that federal courts addressing state law claims must apply the substantive law of the forum state).

in actuality, a claim for breach of contract." See McPeek v. Travelers Cas. & Sur. Co. of Am., No. 06-114, 2007 WL 1875801, at *2 (W.D. Pa. June 27, 2007); see also Northview Motors Corp. v. Chrysler Motor Co., 227 F.3d 78, 91-92 (3d Cir. 2000) (treating a breach of the duty of good faith and fair dealing claim "as any other breach of contract claim, requiring a plaintiff to demonstrate only the existence of a contract, breach and resulting damages"); Se. Pa. Transp. Auth. v. Holmes, 835 A.2d 851, 859 (Pa. Commw. Ct. 2003) ("In the absence of a contractual relationship between [the parties], there is no basis for asserting the breach of good faith and fair dealing doctrine."). Diehl also asserts that EDS's denial of his disability benefits violated the Wage Law. The court will discuss Diehl's breach of contract claim before turning to an analysis of the Wage Law.

**A. Breach of Contract**

To state a claim for breach of contract in Pennsylvania, a plaintiff must allege: "1) the existence of a contract, including its essential terms; 2) a breach of a duty imposed by the contract; and 3) resultant damage." See Church v. Tentarelli, No. 2728-EDA-2007, ___ A.2d ___, 2008 WL 2579676, at *4 (Pa. Super. Ct. June 30, 2008) (quoting Pittsburgh Constr. Co. v. Griffith, 934 A.2d 572, 580 (Pa. Super. Ct. 2003)). In the instant case, Diehl concedes that he was an at-will employee, meaning that his employment with EDS is insufficient to establish the existence of a contract. (Doc. 27 at 3.) Accordingly, to succeed on his breach of contract claim, Diehl must prove that the short-term plan itself was a binding contract between the parties.

In Cooper v. Broadspire Services, Inc., No. 04-5289, 2005 WL 1712390 (E.D. Pa. July 20, 2005), our sister court in the Eastern District of Pennsylvania held that a short-term disability plan similar to that at issue in the instant case was not a contract. Id. at *2-3. In that case, the plaintiff's employer provided a short-term disability plan to its qualified employees. The plan was "a payroll practice" that was financed from the company's "general assets." Id. at *1. The plan "define[d] the term 'disability' . . . and set[] forth the terms and conditions precedent for receipt of a benefit." Id. The plan was administered by a third-party company, which made the initial determination of each applicant's eligibility for benefits. If the third-party administrator denied a benefits application, the plan provided the employee the right to appeal. Id. In concluding that the plaintiff had "failed to allege the necessary terms of a contract for short-term benefits," the Eastern District stated:

> The short-term disability program is a payroll practice . . ., and [the defendant's] employees pay no premium for the benefit and no monies are deducted from their pay to cover the cost of the benefit. The program is thus an employee benefit that is not based on a contractual agreement between [the defendant] and its employees.

Id. at *3; see also Langley v. DaimlerChrysler Corp., 407 F. Supp. 2d 897, 917-18 (N.D. Ohio 2005) (holding that the plaintiff could not establish the existence of a contract for benefits where the benefits were financed "out of the company's general fund" rather than via salary deductions or employee premiums because the plaintiff had provided no consideration for the benefits). Like the plan at issue in Cooper, the plan in the instant case is a "self-funded salary continuance payroll

practice" that is "funded by corporate funds." (Doc. 15 ¶¶ 24-25, 27.) Moreover, the factual similarities between the two plans are numerous. Both plans: (1) define when an employee is considered "disabled" and establish conditions precedent to the receipt of benefits, (2) are administered by a third-party company which makes the necessary eligibility determinations, and (3) provide a right to appeal an adverse decision. Finding no factual basis upon which to distinguish Cooper, the court concludes that a contract for short-term benefits was not formed in the instant case because Diehl provided no consideration for his receipt of the short-term plan's benefits.

Nevertheless, Diehl argues that the short-term plan provided him with a contractual right to benefits because its requirements are described in an employee handbook. In Pennsylvania, the provisions of an employee "handbook or manual can constitute a unilateral offer of employment which the employee accepts by the continuing performance of his or her duties." Darlington v. Gen. Elec., 504 A.2d 306, 320 (Pa. Super. Ct. 1986) (Beck, J., concurring). However, "the existence of an employee handbook does not by itself create an enforceable contract." Engle v. Milton Hershey Sch., No. 06-109, 2007 WL 1365916, at *8 (M.D. Pa. Jan. 19, 2007) (citing Martin v. Capital Cities Media, Inc., 511 A.2d 830, 834-42 (Pa. Super. Ct. 1986)). "An employee handbook is enforceable as a contract only when a reasonable person in the employee's position would interpret its provisions as illustrating the employer's intent to overcome the at-will rule and be legally bound by the representations contained in the book." Id. (citing Hartman v. Sterling, Inc.,

No. 01-2630, 2003 WL 22358548, at *13 (E.D. Pa. Sept. 10, 2003)); see also Bauer v. Pottsville Area Emergency Med. Serv., 758 A.2d 1265, 1269 (Pa. Super. Ct. 2000).

In the instant case, the short-term plan contains the following disclaimer:

> The STD Policy is used by EDS leaders to communicate the parameters of benefit eligibility in relation to short-term disabilities. This publication is only intended as a guideline. None of the information contained herein is intended to give special rights or privileges to specific individuals or to entitle any person to remain employed by EDS. . . . Although some of the guidelines set forth herein may suggest, even strongly, that certain procedures or steps be followed, these procedures should not be interpreted as altering an individual's employment relationship and do not constitute an employment contract.

(Doc. 19, Ex. 1 at 2.) The plan also reserves for EDS "the right to change, modify, suspend, interpret or eliminate any provision . . . at any time, with or without notice." (Id.) Numerous courts interpreting *identical* disclaimers in EDS short-term plans have held that the disclaimers foreclose the possibility that a reasonable person could interpret the plan's language as giving rise to a contract. In Wilkes v. Electronic Data Systems Corporation, 267 F. App'x 661 (9th Cir. 2008), the United States Court of Appeals for the Ninth Circuit affirmed a lower court's decision that the aforementioned disclaimers defeated the plaintiff's breach of contract claim. The court stated:

> Because the employment manual at issue "clearly and conspicuously tells . . . employees that the manual is not part of the employment contract," it did not modify the at-will relationship by creating an implied contract for short-term disability benefits. [The plaintiff] has no right to the disability benefits as compensation earned because the disability benefit, which EDS could rescind at any time, was not an "offer of pay that induced the performance" of the at-will services. Accordingly, no contract to provide benefits was formed between [the plaintiff] and EDS, and therefore her breach of contract claim against EDS must fail.

Id. at 662 (citations omitted). Similarly, in Hirth v. Metropolitan Life Insurance Company, 189 F. App'x 292 (5th Cir. 2006), the United States Court of Appeals for the Fifth Circuit held that the disclaimers "negate any implication that a personnel procedures manual places a restriction on the employment at will relationship." Id. at 293 (citations omitted). Finally, in Tabor v. Electronic Data Systems, Inc., No. 03-70243, 2005 WL 1030418 (E.D. Mich. Apr. 27, 2005), the United States District Court for the Eastern District of Michigan held that the disclaimers evidenced a lack of mutual assent to be bound and indicated that the plan was "not an enforceable contract because EDS retained the right to modify it." Id. at *6-8. Finding no reason to depart from the sound reasoning of these courts, the court concludes that the disclaimers contained in the EDS short-term plan eliminate the possibility that a reasonable employee in Diehl's position could have interpreted the plan as a contract. See Engle, 2007 WL 1365916, at *8.

Because Diehl offered no consideration for the short-term benefits at issue and because the plan's disclaimers evidence a clear intention not to create a contract, the court concludes that the short-term plan is not contractual in nature. EDS's motion for judgment on the pleadings will be granted with respect to Diehl's breach of contract and breach of the duty of good faith and fair dealing claims.[8]

---

[8] The court notes that Diehl cites Abbott v. Schnader, Harrison, Segal & Lewis, LLP, 805 A.2d 547 (Pa. Super. Ct. 2002), for the proposition that an employment relationship may give rise to a unilateral contract. However, this case is factually and legally inapposite. In Abbott, the court considered whether one partner could unilaterally amend a written partnership agreement in a manner that affected vested retirement benefits. 805 A.2d at 552. The court's analysis focused

**B. Wage Law Claim**

The Wage Law defines wages to include "fringe benefits or wage supplements whether payable by the employer from his funds or from accounts withheld from the employe[e]s' pay by the employer." 43 P.S. § 260.2a. Diehl alleges that short-term plan benefits are wages as defined by the Wage Law because they are "paid out of the general assets of EDS." (Doc. 15 ¶ 62.) Accordingly, he claims that, pursuant to the Wage Law, he is entitled to an additional five weeks of short-term plan coverage. (Id. ¶ 61.) In addition, Diehl claims that the Wage Law entitles him to liquidated damages in "an amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater" because he has been denied benefits for greater than a sixty day period. See 43 P.S. § 260.10; (see also Doc. 15 ¶ 64.)

Diehl overlooks the fact that the existence of a contract for wages is a prerequisite for a Wage Law claim. The United States Court of Appeals for the Third Circuit has held that the Wage Law "does not create a right to compensation. Rather, it provides a statutory remedy when the employer breaches a *contractual* obligation to pay earned wages. The contract between the parties governs in determining whether specific wages are earned." Weldon v. Kraft, Inc., 896 F.2d

---

on the issue of whether the plaintiffs' contractual rights to retirement benefits had vested. Id. at 554-55. The court did not discuss the antecedent issue of whether the right to benefits was contractual in nature as such benefits clearly derived from the contract between the parties, specifically, the written partnership agreement. Id. at 552-53. Accordingly, Abbott does not inform the instant analysis because the existence of a contractual right to benefits was not in dispute.

793, 801 (3d Cir. 1990) (emphasis added). Having concluded that the short-term plan is not a contract, see supra Part III.A, the court finds that Diehl cannot maintain a Wage Law claim. Accordingly, the court will grant EDS's motion for judgment on the pleadings with respect to this claim.

## IV. Conclusion

For the foregoing reasons, EDS's motion for judgment on the pleadings will be granted. The court now turns to an issue not explicitly raised in, but implicated by, the pleadings. LINA has yet to file a motion with respect to the state law claims asserted against it. However, the court's analysis of EDS's motion for judgment on the pleadings is clearly applicable to the corresponding state law claims against LINA. The court's holding that the short-term plan is not a contract forecloses *all* claims that are contractual in nature, whether asserted against EDS or LINA. Thus, the court is faced with the question of whether to dismiss, sua sponte, the state law claims against LINA.

Sua sponte dismissal of a claim is disfavored and inappropriate unless the basis for dismissal is apparent from the face of the complaint. Ray v. Kertes, 285 F.3d 287, 297 (3d Cir. 2002). As with any motion for failure to state a claim, a court considering sua sponte dismissal must satisfy itself "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Bryson v. Brand Insulations, Inc., 621 F.2d 556, 559 (3d Cir. 1980). If a complaint is baldly inadequate as a matter of law, the court may, on its own motion, dismiss the complaint or a claim stated therein.

Coggins v. Carpenter, 468 F. Supp. 270, 279 (E.D. Pa. 1979); see also McKinney v. Okla. Dep't of Human Servs., 925 F.2d 363, 365 (10th Cir. 1991); Guthrie v. Tifco Indus., 941 F.2d 374, 379 (5th Cir. 1991); Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987); Murphy v. Lane, 833 F.2d 106, 106-07 (7th Cir. 1987); 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE – Civil § 1357 (3d ed. 1998). This practice promotes the prompt and efficient disposition of cases and protects valuable judicial resources by expediting the dismissal of cases that lack "a shred of a valid claim." Baker v. Dir., U.S. Parole Com'n, 916 F.2d 725, 726 (D.C. Cir. 1990).

There are procedural safeguards for the plaintiff that a court must extend before sua sponte dismissal is proper. The court must accept all of the plaintiff's allegations as true. Bryson, 621 F.2d at 559. The court must give the plaintiff notice and an opportunity to be heard on the legal viability of his complaint. Dougherty v. Harper's Magazine Co., 537 F.2d 758, 761 (3d Cir. 1976); Pourghoraishi v. Flying J, Inc., 449 F.3d 751, 765 (7th Cir. 2006). This notice and opportunity to be heard may be provided by the act of a single defendant who raises a defense applicable to all defendants. See Pourghoraishi, 449 F.3d at 765-66; Coggins, 468 F. Supp. at 279. In the instant case, Diehl has had notice of and an opportunity to rebut the defenses raised by EDS. That only EDS raised the defenses does not alter Diehl's responsibility to marshal every argument of law and fact at his disposal to invalidate the defenses presented. Accordingly, the court concludes that sua sponte dismissal of the state law claims against LINA is proper. The court safely assumes that Diehl would have responded to a motion asserted by LINA with the same legal

and factual arguments that it applied to EDS's motion. Diehl's breach of contract and breach of the duty of good faith and fair dealing claims against LINA will be dismissed. Leave to amend will be denied as futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

An appropriate order will issue.

S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated: July 10, 2008

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID P. DIEHL,** | : | **CIVIL ACTION NO. 1:07-CV-1213** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **ELECTRONIC DATA SYSTEMS CORPORATION and LIFE INSURANCE COMPANY OF NORTH AMERICA,** | : | |
| | : | |
| **Defendants** | : | |

**ORDER**

AND NOW, this 10th day of July, 2008, upon consideration of the motion for judgment on the pleadings (Doc. 18),[9] filed by defendant Electronic Data Systems Corporation, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion for judgment on the pleadings (Doc. 18) is GRANTED.

2. The Clerk of Court is directed to DEFER the entry of judgment in favor of defendant Electronic Data Systems Corporation and against plaintiff David P. Diehl with respect to plaintiff's claims of breach of contract, breach of the duty of good faith and fair dealing, and violation of the Pennsylvania Wage Payment and Collection Law until the conclusion of this case.

---

[1] While the motion is styled as a motion to dismiss, the court has determined that it shall be treated as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (See Doc. 25 ¶ 1(b)).

3. Plaintiff's claims of breach of contract and breach of the duty of good faith and fair dealing against defendant Life Insurance Company of North America are DISMISSED. Leave to amend is denied as futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge